UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MOBILE BAYKEEPER, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NO.: |
| ALABAMA POWER COMPANY, | ) ) |
| Defendant. | ) ) ) |

**COMPLAINT**

Plaintiff, Mobile Baykeeper, Inc. ("Baykeeper"), by and through its counsel, hereby files this Complaint and alleges as follows:

**NATURE OF THE CASE**

1. This citizen enforcement action challenges the unlawful closure plan of Defendant Alabama Power Company ("Alabama Power"), to permanently store millions of tons of coal ash and toxic pollutants in an unlined, leaking impoundment at its James M. Barry Electric Generating Plant ("Plant Barry") in Mobile County, Bucks, Alabama. This plan will continue to impound groundwater and other liquids within the impoundment and will leave coal ash sitting below the water table, where the coal ash will continue to leach pollutants into public waters of the United States and of Alabama indefinitely, all in violation of the Resource Conservation and Recovery Act ("the Act") and the Coal Combustion Residuals Rule ("the CCR Rule" or "the Rule"), 40 C.F.R. § 257.50 *et seq.*, adopted pursuant to the Act.

2. The CCR Rule requires Alabama Power to post its closure plan for the unlined coal ash impoundment at Plant Barry on a publicly available website.[1] Based on the publicly posted plan, Alabama Power plans to leave over 21 million tons of coal ash capped in place within the footprint of its existing unlined impoundment, which is built on top of a tributary of the Mobile River, Sisters Creek, and is in wetlands adjacent to the Mobile River.  This plan leaves large quantities of coal ash in contact with water, including groundwater, and in an impoundment, in violation of the CCR Rule and RCRA.   In fact, the plan even leaves coal ash stored below sea level.  The capped impoundment will be almost surrounded by the Mobile River and within the river's floodplain.  Because the surrounding waters affect the elevation of the groundwater within the ash, the water level in the impoundment will rise and further saturate the ash when there are floods, storms, and with the rise in water level in the Mobile River and the floodplain.

3. This plan violates the CCR Rule and therefore is open dumping in violation of the requirements of the Rule and the Act.  40 C.F.R. § 257.1(a)(2) ("Practices failing to satisfy any of the criteria in . . . §§ 257.50 through 257.107 constitute open dumping, which is prohibited under section 4005 of the Act.").  Alabama Power cannot be allowed to violate the CCR Rule and leave an illegal open dump at its Plant Barry coal ash disposal site in perpetuity.

---

[1] Alabama Power Company, Amended Closure Plan for Ash Pond – Plant Barry (Apr. 1, 2020), https://www.alabamapower.com/content/dam/alabama-power/pdfs-docs/company/how-we-operate/ccr/plant-barry/ash-pond/closure-and-post-closure/Barry%20Ash%20Pond%20Amended%20Closure%20Plan%20Rev%201%20April%202020.pdf.

## JURISDICTION, VENUE, AND NOTICE

4. Mobile Baykeeper, Inc. ("Baykeeper") brings this enforcement action under the citizens' suit provision of the Act. 42 U.S.C. § 6972(a)(1)(A). This Court has jurisdiction over this action pursuant to 42 U.S.C. § 6972(a) and 28 U.S.C. § 1331 and has jurisdiction over the parties.

5. Venue is proper in this court pursuant to 42 U.S.C. § 6972(a). The Plant Barry coal ash impoundment that is the subject of Alabama Power's unlawful closure plan is located in Mobile County, in the Southern District of Alabama.

6. In compliance with 42 U.S.C. § 6972(b) and 40 C.F.R. § 254.2, on July 20, 2022, Baykeeper sent a letter giving Alabama Power, the United States Environmental Protection Agency ("EPA"), and the Alabama Department of Environmental Management ("ADEM") notice of the violations specified in this complaint and of Mobile Baykeeper's intent to file suit after sixty days should those violations continue. A copy of the notice letter with documentation of its receipt is attached as Exhibit 1.

7. More than sixty days have passed since the notice was served pursuant to law and regulation, and the violations identified in the notice letter are continuing at this time and reasonably likely to continue in the future.

8. EPA has not commenced and is not diligently prosecuting a civil or criminal action to redress the violations of the Act and the Rule asserted in this citizen enforcement action.

9. Alabama Power has obtained a state permit from ADEM to cap the Plant Barry coal ash in place. Accordingly, its closure plan is not preliminary, speculative, or contingent on some additional approval. The plan has been finalized and approved by the state, and this action to enforce the separate, additional federal requirements of the CCR Rule is ripe.

10. ADEM's approval does not shield Alabama Power from compliance with the requirements of the federal CCR Rule. ADEM's solid waste permitting program, which authorized Alabama Power's plan for Plant Barry, has not been approved as a federal CCR Rule state permitting program by the EPA. Alabama Power must comply with federal rules as promulgated under 40 C.F.R. §§ 257.102(b) and (d) and RCRA.

## PARTIES AND STANDING

### The Association and Its Members

11. Baykeeper is a § 501(c)(3) non-profit public interest organization with members in Alabama and the Mobile area and operating in the watersheds of the Mobile River and the Mobile-Tensaw Delta.

12. Baykeeper and its members have been harmed by Alabama Power's violations of RCRA and the CCR Rule. They recreate, fish, and own property in these watersheds, including in the vicinity of and downstream from Plant Barry. They fear contamination of drinking water, wildlife, and river water, by ground and surface water contamination and by discharges and pollution from coal ash in groundwater, wetlands, and a creek in Alabama Power's Plant Barry coal ash impoundment. They also fear and are concerned by Alabama Power's plans to store millions of tons of coal ash on the banks of the Mobile River and the Mobile-Tensaw Delta, where the storage will be subject to the risks of flooding, storms, water level rise, and hurricanes, thus exposing Baykeeper and its members and these water resources to the risk of catastrophic failure and a spill of coal ash into the Mobile River and the Delta. Alabama Power's storage of coal ash in groundwater, wetlands, and a creek; its storage on the banks of the Mobile River and the Mobile-Tensaw Delta; its contamination, discharges, and pollution from coal ash in

4

groundwater, wetlands, and a creek; and the risks and dangers created by the location of this storage site, and Alabama Power's plan to continue doing so in perpetuity, are reducing the use and enjoyment by Baykeeper and its members of the Mobile River, the Mobile-Tensaw Delta, and their watersheds. Declarations showing standing are attached as Exhibit 2.

13. Alabama Power has received a permit from ADEM to cap in place its coal ash at Plant Barry, leaving the coal ash impounded and saturated in groundwater and on the banks of the Mobile River and the Mobile-Tensaw Delta, where it will continue to leach out pollutants into the surrounding waters, as well as remaining subject to increased saturation and catastrophic failure and spills from regular flooding, storms, water level rise, and hurricanes. Because Alabama Power has received state approval for its cap-in-place plan, there is no question that this dangerous and defective plan will be implemented—causing continued pollution and perpetuating the risks to Baykeeper and its members, as well as the water resources of the Mobile-Tensaw Delta that they depend on—unless the closure requirements of the federal CCR Rule are enforced at Plant Barry. Upon information and belief, Alabama Power is moving forward at Plant Barry with preliminary work to implement this plan.

14. Alabama Power is proceeding with its plan to cap its Plant Barry coal ash within the existing impoundment, continuing the ongoing pollution of the water resources of the Mobile-Tensaw Delta and creating a continuing danger and threat of catastrophic failure for Baykeeper and its members who own property and/or use and enjoy the waterways downstream. The CCR Rule, however, forbids this result, by the plain terms of its closure standards. Accordingly, the injuries to Baykeeper and its members are directly

related to Alabama Power's failure to comply with the plain terms of the CCR Rule's closure standards.

15. The injuries of Baykeeper and its members will not be redressed except by an order from this Court declaring that Alabama Power's Plant Barry closure plan violates the Act and the CCR Rule, and requiring Alabama Power to file and comply with a closure plan for Plant Barry that satisfies the requirements of the Act and the Rule by eliminating free liquids from the Plant Barry coal ash impoundment; precluding the future impoundment of water, sediment, or slurry; eliminating infiltration of groundwater and other liquids into the coal ash at Plant Barry; and to comply with other relief sought in this action.

## Defendant

16. Alabama Power Company is a corporation with its principal place of business in Alabama. It is a subsidiary of the Southern Company. Alabama Power is engaged in the generation, transmission, distribution, and sale of electricity. Alabama Power owns and operates Plant Barry and its coal ash impoundment, which is the subject of the closure plan violations that give rise to this action.

17. Alabama Power is a "person" within the meaning of § 1004(15) of the Act, 42 U.S.C. § 6903(15).

## STATUTORY AND REGULATORY BACKGROUND

18. Effective October 19, 2015, the EPA published a final rule to regulate the disposal and storage of CCR as a solid waste under subtitle D of the Act. U.S. EPA, Hazardous and Solid Waste Management System; Disposal of Coal Combustion Residuals from Electric Utilities; Final Rule, 80 Fed. Reg. 21,302, 21,312 (Apr. 17, 2015); *as amended by* Technical Amendments to the Hazardous and Solid Waste Management System,

Disposal of Coal Combustion Residuals from Electric Utilities—Correction of the Effective Date, 80 Fed. Reg. 37,988 (July 2, 2015); 40 C.F.R. § 257.50 *et seq.*

19. Under the Act, any violation of the requirements of the Rule constitutes illegal open dumping: "Practices failing to satisfy *any of the criteria* in . . . §§ 257.50 through 257.107 constitute open dumping, which is prohibited under section 4005 of the Act." 40 C.F.R. § 257.1(a)(2) (emphasis added); *see* 40 C.F.R. § 257.2 ("Open dump means a facility for the disposal of solid waste which does not comply with this part.").

20. Under the Rule, by no later than October 17, 2016, Alabama Power was required to "prepare an initial written closure plan consistent with the requirements specified in paragraph (b)(1) of [40 C.F.R. § 257.102]" for coal ash impoundments like the one at Plant Barry. 40 C.F.R. § 257.102(b)(2). The Rule authorizes closure by removal of the ash, also described as clean closure. The Rule allows coal ash to be left in place, a method sometimes called "cap in place," but only under certain prescribed conditions. Alabama Power has proposed to cap the Plant Barry coal ash impoundment in place, and it has obtained a state solid waste permit from ADEM (issued July 1, 2021) for such a plan.

21. Under the CCR Rule, coal ash impoundments can be capped in place only if they satisfy several clearly defined criteria designed to keep the coal ash out of contact with groundwater and other water flows. The Rule requires that a closure plan in which ash will be left in an unlined impoundment must describe "how the final cover system will achieve the performance standards specified in paragraph (d) of this section." *Id.* § 257.102(b)(1)(iii).

22. In particular, the closure plan must demonstrate that if the ash is left in place, it will achieve each and all of the following performance standard requirements:

   a. "Free liquids must be eliminated by removing liquid wastes or solidifying the remaining wastes and waste residues." *Id.* § 257.102(d)(2)(i).

   b. The plan must "[p]reclude the probability of future impoundment of water, sediment, or slurry." *Id.* § 257.102(d)(1)(i); and

   c. The plan must "[c]ontrol, minimize or eliminate, to the maximum extent feasible, post-closure infiltration of liquids into the waste and releases of CCR, leachate, or contaminated run-off to the ground or surface waters." *Id.* §257.102(d)(1)(i).

23. Under each of these three requirements, a coal ash impoundment cannot be capped in place with coal ash in contact with groundwater, much less with large quantities of coal ash sitting feet deep in groundwater, as at Plant Barry. EPA has underscored that under the CCR Rule, "surface impoundments or landfills cannot be closed with coal ash in contact with groundwater. Limiting the contact between coal ash and groundwater after closure is critical to minimizing releases of contaminants into the environment and will help ensure communities near these facilities have access to safe water for drinking and recreation." U.S. EPA, EPA Takes Key Steps to Protect Groundwater from Coal Ash Contamination (Jan. 11, 2022).[2]

24. Yet, Alabama Power is proceeding to cap the unlined Plant Barry coal ash impoundment in place, even though coal ash is in contact with groundwater and will remain in contact

---

[2] https://www.epa.gov/newsreleases/epa-takes-key-steps-protect-groundwater-coal-ash-contamination.

with groundwater after Alabama Power's closure plan is fully implemented—in direct violation of all three key provisions of the CCR Rule.

25. Each of these standards is a separate and independent requirement that must be satisfied before a coal ash impoundment can be capped in place. A failure to satisfy any one of them requires that coal ash be excavated from the impoundment and not capped in place.

*Free Liquids*

26. The Rule provides:

> The owner or operator of a CCR surface impoundment or any lateral expansion of a CCR surface impoundment must meet the requirements of paragraphs (d)(2)(i) and (ii) of this section prior to installing the final cover system required under paragraph (d)(3) of this section.
>
> (i) Free liquids must be eliminated by removing liquid wastes or solidifying the remaining wastes and waste residues.
>
> 40 C.F.R. § 257.102(d)(2).

27. The CCR Rule defines "free liquids" to be "liquids that readily separate from the solid portion of a waste under ambient temperature and pressure." 40 C.F.R. § 257.53.

28. "Free liquids" are not limited to the so-called "free water" that exists above the surface of the coal ash in the impoundment but include all the water throughout the saturated ash. Simply "decanting or dewatering" that so-called "free water" does not eliminate the "free liquids" – water, including groundwater – that saturates the ash below the top surface of the coal ash.

29. Water – which readily separates from coal ash under ambient temperature and pressure – is a free liquid that saturates the ash below the top surface of the coal ash in the impoundment.

30. This provision on its face prevents a coal ash impoundment from being capped and closed in place if coal ash is in groundwater or mixed with water of any kind.[3] Liquid wastes have not been removed from the impoundment if groundwater or any other category of water is in the impoundment, or if the coal ash disposed of in the impoundment is in contact with water. Groundwater and any other category of water are "free liquids" because water readily separates from coal ash under ambient temperature and pressure.

31. The Rule also makes clear that a coal ash impoundment cannot be capped in place based on the hope, the prediction, or the modelling that at some point in the future the groundwater table may recede. This requirement must be met "prior to installing the final cover system."

32. In short, under this provision alone, a coal ash impoundment cannot be capped in place when ash is in contact with groundwater, or any other category of water.

*Future Impoundment of Water, Sediment, or Slurry*

33. A second provision by itself also forbids capping a coal ash impoundment in place when the coal ash is in contact with water. The Rule provides:

> The owner or operator of a CCR unit must ensure that, at a minimum, the CCR unit is closed in a manner that will:
>
> (ii) Preclude the probability of future impoundment of water, sediment, or slurry.
>
> 40 C.F.R. § 257.102(d)(1).

---

[3] The Rule does allow for capping in place if the remaining wastes and waste residues are solidified. Alabama Power has not suggested that solution at Plant Barry.

34. The CCR Rule defines an impoundment to be "a natural topographic depression, man-made excavation, or diked area, which is designed to hold an accumulation of CCR and liquids, and the unit treats, stores, or disposes of CCR." 40 C.F.R. § 257.53. As explained above and below, Alabama Power's closure plan would violate this provision by causing future impoundment of water, sediment and slurry.

*Post-Closure Infiltration and Releases*

35. The Rule contains a third provision that also independently bars the capping in place of an unlined coal ash impoundment when ash is in contact with groundwater or any other water:

> The owner or operator of a CCR unit must ensure that, at a minimum, the CCR unit is closed in a manner that will:
>
> (i) Control, minimize or eliminate, to the maximum extent feasible, post-closure infiltration of liquids into the waste and releases of CCR, leachate, or contaminated run-off to the ground or surface waters or to the atmosphere.

40 C.F.R. § 257.102(d)(1).

36. If groundwater or any other water is in a coal ash impoundment and/or if coal ash is in contact with water, capping the impoundment in place will not control, minimize, or eliminate, to the maximum extent feasible, post-closure infiltration of liquids into the waste or releases of CCR pollution to ground or surface waters. And likewise, even if all or some water is temporarily pumped down within the ash, closure in place will violate this standard where the natural hydrology will cause groundwater to continue flowing into the ash basin and infiltrating into the waste following closure.

37. Other utilities in the Southeast are in fact excavating coal ash from waterfront unlined impoundments. All such utility-owned coal ash impoundments in South and North

11

Carolina have been or are being excavated; Dominion Energy is excavating all its unlined waterfront coal ash impoundments in Virginia; and Georgia Power is excavating over 60 million tons of coal ash from unlined waterfront impoundments in Georgia.

38. It is feasible for Alabama Power to remove the coal ash from the Plant Barry unlined impoundment on the banks of the Mobile River.

39. Violations of the Act and the Rule are enforceable by citizen suit. 42 U.S.C. § 6972.

## FACTS

### Alabama Power's Polluting Coal Ash in Groundwater and an Unlined Impoundment at Plant Barry

40. Alabama Power stores over 21 million tons of coal ash in the unlined impoundment at Plant Barry, which sits in groundwater. The unlined Plant Barry Ash Pond was built to receive wet-sluiced coal ash from Plant Barry in 1965, with the construction of earthen dikes within a meander loop of the Mobile River. The unlined impoundment is almost entirely surrounded by the Mobile River and a cooling canal from the facility. The impoundment sits within the 100-year floodplain of the Mobile River in the Mobile-Tensaw Delta, and it was built in wetlands and on top of a tributary of the Mobile River, Sisters Creek.

41. The coal ash at Plant Barry is saturated in water several feet deep and will be so after closure by capping. After capping, even more of the ash will be in contact with water, including groundwater, during high water events and floods. Further, after the proposed capping, the groundwater will continue to be in hydraulic connection with the Mobile River and a regional surface aquifer. River levels of fifteen to sixteen feet in the Mobile River at Plant Barry are considered just under "moderate" flood stage, meaning that the

water levels in the area of Plant Barry are subject to substantial rises with floods, storms, and hurricanes.

42. It is undisputed that the unlined Plant Barry coal ash impoundment has been contaminating water for decades. A 1991 site assessment for a possible Superfund listing at Plant Barry found that

> [a]rsenic was found in groundwater, surface and subsurface soil, and sediment samples in amounts up to 80 times background. The presence of these inorganic constituents can be traced to coal, the fuel for the power plant, which contains many metallic elements like beryllium, mercury, and arsenic. These metallic elements, which are not readily combustible, remain in higher concentrations in the fly ash waste.[4]

43. This contamination continues today, as ADEM set out in a 2018 Administrative Order citing Alabama Power for contaminating state waters. *In the Matter of Alabama Power Company James M. Barry Electric Generating Plant*, Order No. 18-094-GW at 1-3, 8-10 (ADEM Aug. 15, 2018). In 2018, Alabama Power reported exceedances of groundwater standards for arsenic and cobalt at Plant Barry. More recently, Alabama Power's 2020 Groundwater Monitoring and Corrective Action Reports, required by federal CCR regulations, show statistically significant increases for many of the 20 monitoring wells at the unlined impoundment for the following contaminants: arsenic (at 12 wells), boron (five wells), calcium (13), chloride (12), cobalt (one), fluoride (one), pH (two), sulfate (nine), and TDS (12).

**Alabama Power's Plan to Leave Coal Ash in Groundwater at Plant Barry**

44. Alabama Power is required to close this old, leaking coal ash impoundment. Alabama Power wants to leave the ash within the existing unlined impoundment and cap it in

---

[4] NUS Corporation, 1991, Screening Site Inspection, Phase II, Alabama Power Company – Barry Steam Plant, Bucks, Mobile County, Alabama, EPA ID#: ALD082148800 at ES-1.

place. On July 1, 2021, Alabama Power obtained a state permit from ADEM to allow the impoundment to be capped in place under state solid waste rules. But this plan is governed by and violates separate federal standards set out in the CCR Rule and RCRA.

45. Under its closure plan now set out in the state permit, Alabama Power plans to leave over 21 million tons of coal ash capped in place in the old impoundment within the floodplain of the Mobile River, on top of wetlands and Sisters Creek. Alabama Power will attempt to remove the surface water in the ash pond, consolidate the ash, construct new berms and a version of a barrier wall around the newly consolidated ash, install an internal toe drain, grade the ash, and install a cap. The impoundment will still be unlined and in the footprint of the old impoundment, and Alabama Power seeks a variance from slope requirements due to the steepness of the coal ash slope within the impoundment. Alabama Power will monitor the site for 30 years, but it makes no commitment to continue maintenance of the site after the 30-year requirement.

46. This plan leaves large quantities of coal ash in contact with water, including groundwater, and in an impoundment in violation of the CCR Rule and RCRA.

47. There is no layer beneath the coal ash impoundment that will prevent the coal ash from being in contact with water. The lack of such a layer is evidenced by the fact that Alabama Power's groundwater testing shows coal ash contamination has flowed from the coal ash to the aquifer and groundwater below the mixed clay formations under the coal ash impoundment. Alabama Power's consultant describes the materials under the coal ash impoundment as "leaky" and has determined that a barrier wall to prevent the flow of groundwater will not be effective or feasible to control groundwater contamination, and in fact would increase contact between coal ash and groundwater.

48. The unlined impoundment both before and after capping impounds coal ash, water, sediment, and slurry within one or more depressions and dikes. As set out above, the impoundment was constructed through the building of dikes, and dikes will remain around the capped impoundment. When the impoundment is capped in place, another berm will be built to contain coal ash, slurry, water, and sediment. The impoundment contains natural and/or man-made depressions that impound water, coal ash, slurry, and sediment.

49. As set out above, Alabama Power's coal ash in the Plant Barry impoundment has contaminated groundwater, and under Alabama Power's current Closure Plans and the state permit issued by ADEM, contamination will continue indefinitely into the future.

## CLAIMS FOR RELIEF

50. The allegations of all preceding paragraphs are incorporated by reference as if repeated and set forth herein.

### Alabama Power's Violations of the CCR Rule and RCRA

51. Alabama Power is violating 40 C.F.R. §§ 257.102(b) and (d) and RCRA. Alabama Power has prepared and published a CCR Rule closure plan that fails to meet the minimum requirements for closure plans and violates the federal CCR Rule by leaving coal ash at Plant Barry in and in contact with water and by not eliminating free liquids; by impounding slurry, sediment, and/or water; and by failing to control, minimize or eliminate, to the maximum extent feasible, post-closure infiltration of liquids into the waste and releases of CCR, leachate, or contaminated run-off to the ground or surface waters. Upon information and belief, Alabama Power is proceeding to implement this illegal plan.

52. Alabama Power's cap-in-place closure plan for Plant Barry violates the three independent standards of the federal CCR Rule discussed above, and therefore violates RCRA also, in three separate and independent ways.

## COUNT 1
## VIOLATION OF 40 C.F.R. § 257.102(d)(2) and RCRA

53. In violation of 40 C.F.R. § 257.102(d)(2) and RCRA, Alabama Power's closure plan for the Plant Barry coal ash impoundment fails to satisfy the CCR Rule's standard to eliminate free liquids prior to capping in place. In violation of the CCR Rule and RCRA, the coal ash in the Plant Barry unlined impoundment is in contact with groundwater and will be in contact with groundwater, saturated in water, and located in water when the final cover system is installed. Alabama Power has not eliminated and will not eliminate free liquids before the final cover system is installed.

## COUNT 2
## VIOLATION OF 40 C.F.R. § 257.102(d)(1)(ii) and RCRA

54. In violation of 40 C.F.R. § 257.102(d)(1)(ii) and RCRA, Alabama Power's closure plan for the Plant Barry coal ash will result in the continued impoundment of water, sediment, or slurry, and fails to preclude the probability of future impoundment of water, sediment, or slurry.

## COUNT 3
## VIOLATION OF 40 C.F.R. §257.102(d)(1)(i) and RCRA

55. In violation of 40 C.F.R. §257.102(d)(1)(i) and RCRA, Alabama Power's cap-in-place closure plan does not control, minimize, or eliminate, to the maximum extent feasible, post-closure infiltration of liquids into the waste or releases of CCR pollution to ground or surface waters.

56. These violations occurred before and on July 1, 2021, and are ongoing.

57. Under the CCR Rule and RCRA, Alabama Power cannot close the coal ash impoundment at Plant Barry by carrying out its plan for capping in place and by implementing the plan that is the subject of the Alabama state solid waste permit.

## PRAYER FOR RELIEF

WHEREFORE, Baykeeper respectfully requests that this Court:

A. Issue a declaratory judgment that Alabama Power is violating the Coal Combustion Residuals Rule and the Resource Conservation and Recovery Act by failing to comply with the closure plan requirements of the Rule, and that Alabama Power is violating the open dumping prohibition of the Act;

B. Enter appropriate preliminary and permanent injunctive relief to prevent Alabama Power from implementing this illegal closure plan;

C. Enter appropriate preliminary and permanent injunctive relief to ensure that Alabama Power files a closure plan for its Plant Barry coal ash impoundment that satisfies the requirements of the Act and the Rule by eliminating free liquids from the Plant Barry coal ash; precluding the possibility of future impoundment of water, sediment, or slurry; and eliminating infiltration of groundwater and other liquids into Alabama Power's coal ash, as required by the CCR Rule;

D. Award Baykeeper the costs of this action, including reasonable attorney and expert fees, as authorized by 42 U.S.C. § 6972(e); and

E. Grant Baykeeper such further and additional relief as the Court deems just and proper.

Respectfully submitted this 26th day of September, 2022.


*[signature]*

Barry Brock (ASB-9137-B61B)
Christina Tidwell (ASB-9696-D10R)
Southern Environmental Law Center
2829 Second Avenue S., Ste. 282
Birmingham, AL 35233
Tel: (205) 745-3060
bbrock@selcal.org
ctidwell@selcal.org
*Attorneys for Plaintiff*


*[signature]*

Richard Moore (ASB-5730-M55R)
450C Government Street
Mobile, AL 36602
Tel: (865) 300-1206
richardmooreig@hotmail.com
*Attorney for Plaintiff*



With copies, via U.S. Mail to:

The Hon. Michael Regan, Administrator, U.S. EPA
The Hon. Daniel Blackman, Regional Administrator, U.S. EPA, Region 4
Mr. Lance LeFleur, Director, ADEM
Mr. Stephen Cobb, Chief, Land Division, ADEM
The Hon. Sean P. Costello, U.S. Attorney, Southern District of Alabama