## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MOBILE BAYKEEPER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO.: 1:22-cv-00382-KD-B |
| ALABAMA POWER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S STANDING BRIEF

Plaintiff Mobile Baykeeper, Inc. (Baykeeper), submits this brief as directed by this Court's Order of November 2, 2023.

**1. Baykeeper Has Standing to Enforce the CCR Rule's Performance Standards.**

Baykeeper brings this enforcement action under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, and the Coal Combustion Residuals Rule ("CCR Rule" or "Rule"), 40 C.F.R. § 257.50 *et seq.* The statute and the CCR Rule make clear that Baykeeper has standing to bring this enforcement action now.

The CCR Rule, 40 C.F.R. §§ 257.50-.107, was adopted by the U.S. Environmental Protection Agency (EPA) under RCRA to carry out the statutory mandate to "minimize the present and future threat to human health and the environment." 42 U.S.C. § 6902(b). Congress specifically relied upon citizen enforcement to ensure compliance with RCRA regulations: "[A]ny person may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of any . . . standard [or] regulation . . . which has become effective pursuant to this chapter." *Id.* § 6972(a)(1)(A).

As provided by Congress, the CCR Rule "relies on citizen enforcement." Final Rule, 80 Fed. Reg. 21,302, 21,399 (Apr. 17, 2015). As EPA explains, "citizens perform a crucial role in the implementation and enforcement of this rule."[1] The Rule includes disclosure requirements, such as a mandatory written closure plan made public before the closure process has begun, to "minimize the danger of owners or operators abusing the self-implementing system being established in this rule through increased transparency and by facilitating the citizen suit enforcement provisions applicable to the rule." *Id.* at 21,427. Thus, the Rule specifically provides for citizen enforcement at the stage that Baykeeper initiated this case.

### 2. Baykeeper Has Demonstrated Harm, Interests, and Injuries that Establish its Standing.

Attached to the Complaint are six detailed declarations from Baykeeper and its members that lay out their injuries, interests, and concerns that arise from Alabama Power's present CCR Rule violations. Doc. 1-3. Baykeeper "has standing to bring an action on its members' behalf if (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1279 (11th Cir. 2015) (internal citations and quotations omitted). As to the second and third elements, the interests Baykeeper seeks to protect are central to its mission to protect the water resources of the Mobile River watershed and the Mobile-Tensaw Delta, Doc. 1-3 at 17-18, and the claims do not seek money damages or otherwise require the participation of individual members.

---

[1] U.S. EPA, *Frequent Questions about the 2015 Coal Ash Disposal Rule*, https://www.epa.gov/coalash/frequent-questions-about-2015-coal-ash-disposal-rule (last visited Nov. 16, 2023).

As to the first element, members of Baykeeper would have standing to sue in their own right, having shown "(1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'"  *Black Warrior Riverkeeper,* 781 F.3d at 1279.

In *Black Warrior Riverkeeper v. U.S. Army Corps of Engineers*, the Eleventh Circuit held that a Riverkeeper group had Article III standing to challenge a general permit issued by the U.S. Army Corps of Engineers for surface mining activities.  *Id.* at 1276.  Members of Riverkeeper attested that they "use waters downstream from mining sites for recreational and other purposes," that pollution "decrease[d] their enjoyment" of the waters, and that pollution impaired habitats for wildlife the members observed and studied.  *Id.* at 1280.  This, the court reasoned, was "clearly" sufficient to show injury in fact, and the elements of causation and redressability were met because "Riverkeeper has alleged that its members use areas downstream from the . . . stream filling operations."  *Id.* at 1280.

Similarly, in *Glynn Environmental Coalition, Inc. v. Sea Island Acquisition, LLC*, an environmental organization filed suit challenging a general permit issued under the Clean Water Act.  26 F.4th 1235, 1238 (11th Cir. 2022).  The court overturned the district court's decision to dismiss for lack of standing, reasoning that at least one member "plausibly and clearly allege[d] a concrete injury" to their aesthetic interest because the member "regularly recreates in the area," and "explained how and why she derived aesthetic pleasure" from the wetland.  *Id.* at 1241.

"In the environmental litigation context, the standing requirements are not onerous."  *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003).  "[A]n individual plaintiff may show injury-in-fact 'by attesting that he uses, or would use more frequently, an area affected by the alleged violations and that his aesthetic or recreational interests in the area have been

harmed.'" *Black Warrior Riverkeeper*, 781 F.3d at 1280 (quoting *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1344 (11th Cir. 2005)).  Members who use the affected area and whose "reasonable concerns" about pollution affect their use and enjoyment of these waters demonstrate standing.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181-84 (2000).

**Injury-in-Fact.**  The standing declarations document how Baykeeper members' use and enjoyment of these waters are harmed by Alabama Power's Rule violations.  Doc. 1-3.  For example, Kendall Dexter is a part owner of a small island downstream from Plant Barry, with a camp from which he fishes, hunts, and camps throughout the Delta; he will not swim or eat fish caught near Plant Barry due to his concerns about coal ash pollution, and he fears that a coal ash spill from Plant Barry would harm his property and its value.  *Id.* at 2-4.  Marl Cummings is another part owner of the island camp and has the same concerns.  *Id.* at 5-8.  Luke Adams also owns property in the Delta and hunts and fishes downstream of Plant Barry.  He too will not eat fish caught near the Plant Barry impoundment because of the coal ash pollution and is concerned about the risk of a spill.  *Id.* at 9-11.  Vaughn Millner also will not kayak near or eat fish from the vicinity of the Plant Barry impoundment due to the ongoing pollution.  *Id.* at 13-16.

**Causal Connection.**   These injuries to Baykeeper's members are fairly traceable to Alabama Power's Rule violations.  Alabama Power is proceeding with its plan to cap saturated coal ash within the existing impoundment, continuing the ongoing pollution of the water resources of the Mobile-Tensaw Delta and creating a continuing danger and threat of catastrophic failure for Baykeeper and its members who own property and use and enjoy the waterways downstream. Doc. 1 ¶ 14.

The CCR Rule puts in place closure performance standards designed to prevent exactly these injuries: requirements that prevent ongoing pollution of surrounding water resources and that ensure long-term stable storage of coal ash without the risks posed by the storage of coal ash in a location and in a way that result in water remaining in the CCR unit or moving through it.  And the CCR Rule's performance standards for cap-in-place closure impose current obligations; these closure requirements are written in the future tense to make clear that they apply now, *before* the coal ash impoundment capping is completed: "*[P]rior to* installing the final cover system," the "owner or operator of a CCR unit" must meet the requirement that "[f]ree liquids must be eliminated," 40 C.F.R. § 257.102(d)(2)(i); the utility must "ensure that, at a minimum, the CCR unit is closed in a manner that *will [p]reclude* the probability of *future* impoundment of water, sediment, or slurry," *id*. § 257.102(d)(1)(ii); and the utility must "ensure that, at a minimum, the CCR unit is closed in a manner that *will* [c]ontrol, minimize or eliminate, to the maximum extent feasible, post-closure infiltration of liquids into the waste and releases of CCR, leachate, or contaminated run-off," *id*. § 257.102(d)(1)(i) (emphases added).

Violations of all three requirements are occurring now, because it is undisputed that Alabama Power is carrying out closure of the Plant Barry coal ash impoundment.  Doc. 1 ¶ 51.  On July 1, 2021, Alabama Power obtained a permit from the Alabama Department of Environmental Management (ADEM) to carry out closure of the Plant Barry impoundment, as alleged in the Complaint.  *Id.* ¶ 20.  Alabama Power has stated that it is well underway in carrying out that plan on the ground.  Doc. 60 at 2.  The violations alleged in the Complaint are taking place now.

Because these standards apply to the selection of a closure method, they must be enforced now to redress Baykeeper's injuries before closure is complete.  Otherwise, Alabama Power would be allowed to cap the Plant Barry coal ash impoundment in violation of the Rule's standards, with

5

enforcement occurring only after an illegal and expensive closure had been completed.  Delaying enforcement until after closure would subject Baykeeper and its members to continuation of the injuries set out in the Complaint and the declarations—the continued, unlawful pollution as harmful toxic metals like arsenic continue to leach out of the saturated coal ash into the surrounding waters, as well as to the risk of catastrophic failure due to hurricanes or flooding.  Doc. 1 ¶ 12. The Complaint alleges, as shown in public documents, that the Plant Barry impoundment has for decades been contaminating the groundwater that flows to the Mobile River with arsenic and that the groundwater and coal ash will continue to mix and result in contamination of water resources if Alabama Power puts in place its current closure plant.  *E.g.*, *id.* ¶¶ 42-49.[2]

Preventing citizen enforcement now would also cause a huge waste of resources, because Alabama Power would have put in place a closure that does not comply with the federal Rule's performance standards.  Duke Energy has explained under oath that at five of its sites where coal ash was saturated in water, capping in place with additional engineering controls to comply with the Rule's performance standards would have cost over one billion dollars *more* than the Rule's other closure option: removing the coal ash to dry, lined, landfill storage.[3]

**Redressability.**  The injuries of Baykeeper's members will be redressed by a favorable decision requiring Alabama Power to comply with a closure plan for Plant Barry that satisfies the requirements of RCRA and the Rule.  Doc. 1 ¶ 15.  An order from this Court will require Alabama Power to comply with the Rule's cap-in-place standards by eliminating free liquids in the

---

[2] NUS Corporation, 1991, Screening Site Inspection, Phase II, Alabama Power Company – Barry Steam Plant, Bucks, Mobile County, Alabama, EPA ID#: ALD082148800 at ES-1; *In the Matter of Alabama Power Company James M. Barry Electric Generating Plant*, Order No. 18-094-GW at 1-3, 8-10 (ADEM Aug. 15, 2018).
[3] Duke Energy Testimony before the S.C. Pub. Serv. Comm'n (Testimony of Senior V.P. Bednarcik), Docket No. 2022-254-E, at 10 (Sept. 1, 2022), https://dms.psc.sc.gov/Attachments/Matter/bab8c390-82a7-46cd-b4e2-1df3c156e703.

impoundment; precluding the probability of future impoundment of water, sediment, or slurry; and stopping the infiltration of liquids into the coal ash and releases of coal ash pollution from the impoundment.  *Id.,* Prayer for Relief, ¶ C.  If Alabama Power cannot comply with the cap-in-place standards, it must remove the ash from the unlined riverside impoundment.  Either option for lawful closure of the Plant Barry coal ash impoundment addresses the injuries to Baykeeper's members because it will prevent pollution, make the closure safer, and ensure compliance with the Rule's protective standards.  These are exactly the interests that the Rule was designed to protect.

### 3.  Baykeeper's Standing Is Not Affected by Any Other Pending Proceeding.

There are four pending proceedings related to the CCR Rule that deal with Plant Barry or the CCR Rule in Alabama, or that the Court has raised.  None of those affect Baykeeper's standing to enforce the Rule now as to Plant Barry.  Baykeeper understands that the Court would like its brief to address the pending D.C. Circuit proceedings; Baykeeper briefly lists the others.

**EPA's Notice of Potential Violations.**  On January 31, 2023, EPA issued a Notice of Potential Violations (NOPV) of the CCR Rule by Alabama Power concerning its method of closure at Plant Barry.  Doc. 64-2.  Baykeeper has explained in proceedings before the Magistrate Judge how the NOPV supports Baykeeper's claims, Doc. 64-1, and why the NOPV does not affect the progress of this case.  Doc. 74-1.  The Magistrate Judge did not cite the NOPV as a bar against Baykeeper's claims or a basis to delay this action.

**ADEM's Suit Against EPA.**  On April 3, 2023, Alabama filed suit on behalf of ADEM against EPA in the U.S. District Court for the District of Columbia to force EPA to act on ADEM's application to operate a federal CCR permitting program.  *Alabama v. U.S. EPA*, No. 1:23-cv-00903-JEB (D.D.C.).  On August 14, 2023, EPA issued a proposed denial of ADEM's application.  On September 6, 2023, the Court stayed the suit until March 4, 2024, and is requiring status reports

every 60 days.  The case does not deal with Plant Barry, the CCR Rule's closure standards, or Baykeeper's standing to enforce those standards in this suit.

**EPA's Proposed Denial of ADEM's CCR Rule Permitting Program Application.**  On August 14, 2023, EPA issued a proposed denial of ADEM's request for approval of a coal ash permitting program under the federal CCR Rule; the public comment period ended on October 13, 2023.  In a joint status report filed on November 3, 2023, the parties in Alabama's suit against EPA (discussed above) stated that EPA expects to provide a date for its final decision on Alabama's application by the date of its next status report due in early January 2024.  This proceeding does not affect Baykeeper's standing to bring this suit.  Congress specifically provided that citizen enforcement of the Rule's standards was not impacted until a state agency issues a permit pursuant to an EPA-authorized state program, which has not happened here.  42 U.S.C. § 6945(d)(3)(A).  More fundamentally, ADEM can take no action that addresses the federal CCR Rule requirements until EPA has approved its permitting program, and here EPA has proposed to deny it.  *Id*. § 6945(d)(1)(A) and (B).

**D.C. Circuit Litigation.**  In the D.C. Circuit, utilities (but not Alabama Power) and industry groups sued EPA, challenging non-final actions EPA took in 2022: several *proposed* decisions regarding individual coal ash sites in the Midwest, letters to several utilities and Georgia's agency, and a press release.  *Elec. Energy, Inc., et al. v. U.S. EPA*, No. 22-1056 (consolidated with No. 22-1058) (D.C. Cir.).  The challengers claim these communications constituted a new rulemaking that prohibited closing an impoundment with any coal ash in contact with groundwater.  The Department of Justice has filed a brief explaining that the court lacks jurisdiction over this premature challenge, in addition to the fact that EPA simply applied the plain language of the 2015 Rule regarding closure performance standards and did not make or apply a

"new" rule.  Doc. 93-2.  Utilities have separately challenged EPA's *final* decision on one of the sites in question, the Gavin Plant in Ohio.  *Elec. Energy, Inc., et al. v. U.S. EPA*, No. 23-1035 (consolidated with Nos. 23-1036, 23-1037, 23-1038) (D.C. Cir.).

Baykeeper's Complaint alleges violations of three specific protective standards enacted in the CCR Rule in 2015.  Baykeeper has not pleaded claims based on violations of statements in EPA's press release or other documents.  Baykeeper has cited EPA's analysis in responding to industry arguments concerning the Gavin site, as well as similar analysis by Duke Energy and an industry research arm.  But Baykeeper is enforcing the 2015 Rule itself, and the pre-existing 2015 Rule and its performance standards are not under challenge in the D.C. Circuit litigation.

If the D.C. Circuit were to agree with the challengers that EPA created a new rule in 2022 prohibiting any contact between ash and groundwater, EPA might need to undertake a new rulemaking pursuant to the Administrative Procedure Act.  But Baykeeper's Complaint is not based on any hypothetical new Rule but instead on the plain language of the 2015 Rule itself.

As alleged in the Complaint, Alabama Power must eliminate free liquids from the impoundment, preclude the probability of future impoundment of slurry and water in the impoundment, and comply with the requirement regarding infiltration of water into the impoundment and outward flow of contaminants.  Whatever happens in the D.C. Circuit litigation will not change those requirements or the facts of the ongoing closure of the Plant Barry impoundment.  Alabama Power itself admits that approximately one million tons of its Plant Barry coal ash will remain saturated in water after its cap-in-place plan is complete.[4]  And EPA has found

---

[4] Letter from Susan B. Comensky, Ala. Power Co., to Robert Nakamoto, EPA Region 4, re EPA NOPV for Plant Barry: Third Response of Alabama Power at 4 (Apr. 3, 2023), https://lf.adem.alabama.gov/WebLink/DocView.aspx?id=105077712&dbid=0&cr=1 (stating that "less than 5% of the total volume" of 21.7 million tons will remain saturated).

that the amount of coal ash left sitting in water after closure will be approximately five times greater. Doc. 64-2 at 8. The largest regulated utility in the Southeast, Duke Energy, agrees that a cap-in-place closure plan like Alabama Power's Plant Barry plan is prohibited by the 2015 Rule itself: "these closure performance standards prohibit closure-in-place where groundwater is in actual or likely contact with the CCR [coal ash] unless effective engineering measures can be installed to control, minimize, or eliminate such conditions." Duke Energy Testimony before the S.C. Pub. Serv. Comm'n, Doc. 61-3 at 16. Because this action enforces the 2015 Rule, the D.C. Circuit litigation cannot impact Baykeeper's standing and is no barrier to this case proceeding to a resolution.

## CONCLUSION

Baykeeper has standing and this case should proceed to ensure Alabama Power's ongoing closure of the Plant Barry coal ash impoundment complies with RCRA and the 2015 Rule.

Respectfully submitted, this 16th day of November 2023.

s/ Barry A. Brock
Barry A. Brock
*One of the Attorneys for Plaintiffs*

**OF COUNSEL:**

Barry Brock (ASB-9137-B61B)
Christina Tidwell (ASB-9696-D10R)
Southern Environmental Law Center
2829 Second Avenue S., Suite 282
Birmingham, AL 35233
Telephone: (205) 745-3060
bbrock@selcal.org
ctidwell@selcal.org

Richard Moore (ASB-5730-M55R)
450C Government Street
Mobile, AL 36602
Telephone: (865) 300-1206
richardmooreig@hotmail.com

Nicholas Torrey *(admitted pro hac vice)*
Southern Environmental Law Center
601 W. Rosemary St, Suite 220
Chapel Hill, NC 27516
Telephone: (919) 967-1450
ntorrey@selcnc.org

Frank Holleman *(admitted pro hac vice)*
Southern Environmental Law Center
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
fholleman@selcsc.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 16, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

s/ Barry A. Brock
Barry A. Brock
*One of the Attorneys for Plaintiffs*
