**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**MOBILE BAYKEEPER, INC.,
Plaintiff,**

**v.**

**ALABAMA POWER COMPANY,
Defendant.**

**Case No.: 1:22-cv-00382-KD-B**

**ORAL ARGUMENT SCHEDULED
FOR DECEMBER 12, 2023**

# DEFENDANT ALABAMA POWER COMPANY'S BRIEF ON STANDING

**OF COUNSEL:**

**Jaime W. Betbeze
(jbetbeze@maynardnexsen.com)
Raymond L. Bell, Jr.
(rbell@maynardnexsen.com)
Evan N. Parrott
(eparrott@maynardnexsen.com)
MAYNARD NEXSEN P.C.
RSA Battle House Tower
11 N. Water St., Ste. 24290
Mobile, Alabama 36602
Telephone: (251) 432-0001**

**Ed R. Haden
(ehaden@balch.com)
Charles A. Burkhart
(cburkhart@balch.com)
Steven A. Burns
(sburns@balch.com)
Sean W. Shirley
(sshirley@balch.com)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100**

**November 30, 2023**

# TABLE OF CONTENTS


Table of Authorities ..... ii

ARGUMENT ..... 1

I. Baykeeper Fails To Establish An Injury-In-Fact From Speculative Future Events Or Conclusory Assertions. ..... 2

A. Baykeeper's Allegation of a Statutory Violation Is Insufficient to Establish Standing Because Baykeeper Must Also Show Concrete Harm to its Members. ..... 2

B. Baykeeper Fails to Allege Imminent Plausible Harm Because Fear of Possible Future Dike Breakages and Pollution Do Not Establish that those Events are "Certainly Impending." ..... 2

C. Statements of Present Pollution are Conclusory and Implausible Because of the Lack of Specific Supporting Factual Allegations. ..... 7

II. The Alleged Harm Is Not Fairly Traceable To The Alleged Statutory Violation But Instead To The Unsupportable Fear Of Future Events Or Implausible, Conclusory Assertions. ..... 9

III. Baykeeper's Sought After Injunctive Relief Will Not Redress Their Alleged Injury Because An Unrelated Fish Advisory Already Limits Fishing In The Portion of the Mobile River Near Plant Barry. ..... 10

CONCLUSION ..... 10

CERTIFICATE OF SERVICE ..... 12

# TABLE OF AUTHORITIES

## CASES

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*,
781 F.3d 1271 (11th Cir. 2015) .......... 6

*Campos v. I.N.S.*,
32 F.Supp.2d 1337 (S.D. Fla.1998) .......... 3

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 1, 4, 5, 9

*Glynn Environmental Coalition, Inc. v. Sea Island Acquisition, LLC*,
26 F.4th 1235 (11th Cir. 2022) .......... 6

*Hancock v. Hood*,
686 F. Supp. 2d 1240 (S.D. Ala. 2010) .......... 3

*HEAL Utah v. PacifiCorp*,
375 F. Supp. 3d 1231 (D. Utah 2019) .......... 6

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
48 F. 4th 1236 (11th Cir. 2022) .......... 2, 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 1, 5

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) .......... 5

*Ranger Environmental Services LLC v. Foehl*,
No. 1:23-00297-KD-M, 2023 WL 6931336 (S.D. Ala. Oct 19, 2023) .......... 4

*Roanoke R. Basin Ass'n v. Duke Energy Progress, LLC*,
No. 1:17-cv-561, 2018 WL 1605022 (M.D.N.C. Mar. 29, 2018) .......... 10

*Roanoke R. Basin Ass'n v. Duke Energy Progress, LLC*,
No. 1:17-cv-707, 2018 WL 2417862 (M.D.N.C. May 29, 2018) .......... 10

*South River Watershed All., Inc. v. Dekalb Cnty, Georgia*,
69 F. 4th 809 (11th Cir. 2023) .......... 1

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 2

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020) .......... 5

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... passim

*U.S. v. Howard*,
28 F.4th 180 (11th Cir. 2022) .......... 3

**STATUTES**

42 U.S.C. § 6972 .......... 6

**RULES**

Rule 201, Fed. R. Evid. .......... 3

**REGULATIONS**

40 C.F.R. § 257.83 .......... 3

40 C.F.R. § 257.95 .......... 8

**OTHER AUTHORITIES**

ADPH, *Alabama Fish Consumption Advisories 2023 (2023), available at*
https://www.alabamapublichealth.gov/tox/assets/al-fish-advisory-2023.pdf .......... 10

EPA, *Final Report: Dam Safety Assessment of CCW Impoundments, James M. Barry Electric Generating Plant* (Dec. 8, 2010), *available at* https://www3.epa.gov/epawaste/coal/pdf/apc_barry_cbi_final.pdf ... 3

NOAA, Historical Hurricane Tracks, https://coast.noaa.gov/hurricanes .......... 3

U.S. Army Corps of Engineers, Black Warrior-Tombigbee River Chart No. 4 (2019),
https://www.sam.usace.army.mil/Missions/Civil-Works/Navigation/Black-Warrior-and-Tombigbee-River/BWT-Alabama-Rivers-Navigation/River-Charts/ (last visited Nov. 27, 2023) .......... 7

USGS, Water Quality in the Mobile River Basin Alabama, Georgia, Mississippi, and Tennessee, 1999-2001, Circular 1231 (2004), *available at* https://pubs.usgs.gov/circ/2004/1231/pdf/circular1231.pdf
(last visited Nov. 29, 2023) .......... 8

**ALABAMA POWER COMPANY'S BRIEF ON STANDING**

While Mobile Baykeeper, Inc. ("Baykeeper") alleges violations of the Resource Conservation and Recovery Act ("RCRA") and a RCRA regulation, (Doc. 1, PageID.16-17), it fails to show how the alleged violations harm its members. Baykeeper alleges its members "fear" a "catastrophic failure" of the dikes containing the coal ash and "fear contamination of drinking water." (Doc. 1, PageID.4.) But the dikes have not failed in 58 years through numerous hurricanes, and independent and judicially noticeable reports show that the drinking water is safe. (Doc. 60, PageID.13924) (Doc. 72-1, PageID.17892-17893). Fear of future injury fails because the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient" to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

**ARGUMENT**

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, *standing*." *Id*. (emphasis added) (citation omitted).

Baykeeper argues that it has associational standing which requires that one or more of its members "have standing to sue in their own right." (Doc. 99, PageID.19344.) *South River Watershed All., Inc. v. Dekalb Cnty, Georgia*, 69 F. 4th 809, 819 (11th Cir. 2023) (applying *TransUnion* in a Clean Water Act citizen suit) (internal quotation marks and citations omitted). For an individual member of Baykeeper to have standing in his or her own right, (1) the member must have "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, … and (b) actual or imminent, not 'conjectural' or 'hypothetical'"; (2) "the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, …'" and (3) it must be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). "[A]t the motion-to-dismiss stage, a plaintiff must allege facts that, taken as true, 'plausibly' state

that the elements of standing are met." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F. 4th 1236, 1241 (11th Cir. 2022) (en banc) (holding alleged statutory violation without harm to plaintiff was insufficient to establish standing).

## I. Baykeeper Fails To Establish An Injury-In-Fact From Speculative Future Events Or Conclusory Assertions.

### A. Baykeeper's Allegation of a Statutory Violation Is Insufficient to Establish Standing Because Baykeeper Must Also Show Concrete Harm to its Members.

Baykeeper asserts that "[t]he statute and the CCR Rule make clear that Baykeeper has standing to bring this enforcement action now." (Doc. 99, PageID.19343.) But the Supreme Court has held that to establish standing, an individual must show an "*injury in law*" (i.e., violation of the statute) and an "*injury in fact*" (i.e., physical, financial, or other harm to the plaintiff similar to a traditional tort). *TransUnion*, 141 S. Ct. at 2205. *See Hunstein*, 48 F. 4th at 1242 ("A 'bare statutory violation' is not enough, no matter how beneficial we may think the statute to be."). "Congress did not ... afford ... federal '*citizen suit*'*-style causes of action* to private plaintiffs who did not suffer concrete harms." *TransUnion*, 141 S. Ct. at 2206 n.1 (emphasis added). Assuming arguendo that Alabama Power's closure plan violates RCRA and its regulations as Baykeeper alleges (Doc. 1, PageID.16-17), Baykeeper has not adequately alleged how such violation actually harms its members. Consequently, Baykeeper lacks Article III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").

### B. Baykeeper Fails to Allege Imminent Plausible Harm Because Fear of Possible Future Dike Breakages and Pollution Do Not Establish that those Events are "Certainly Impending."

Baykeeper alleges that its members "fear" a "catastrophic failure and a spill of coal ash into the Mobile River …." (Doc. 1, PageID.4.) Of course, no such thing has happened, nor is there any indication that it will. Such a spill would depend on an attenuated chain of events. First, failure of the existing dikes containing coal ash at Plant Barry would depend on those dikes becoming unstable. Such instability is improbable given that EPA inspected the dikes in 2010 and

found that they had the highest rating for stability[1] and Alabama Power's ongoing obligation to inspect the dikes to confirm the absence of vulnerabilities. *See* 40 C.F.R. § 257.83. Second, Alabama Power's closure plan provides for the installation of new, additional berms that further reduce the risk of a spill. (Doc. 27-1, PageID.4866.) Third, Baykeeper alleges no facts by which a storm event could cause a spill to occur. In 58 years, through a number of hurricanes, including Category 5 hurricanes, the dikes have never failed.[2] Baykeeper assumes a failure could happen, but alleges no flaw in facility design, construction, or maintenance that could lead to a spill at some point in the future.

Similarly, Baykeeper alleges that its members "*fear* contamination of drinking water, wildlife, and river water, by ground and surface water contamination" and cites to Alabama Power's reports of levels of contaminants that exceed regulatory limits at groundwater wells near the coal ash site on Alabama Power's property. (Doc. 1, PageID.4, 13) (emphasis added); (Doc.40-1, PageID.5760). But the presence of contaminants in one location does not mean there are contaminants at a different location. Municipalities around Plant Barry test their drinking water regularly and these publicly available and judicially noticeable test results confirm that the drinking water outside of Alabama Power's property is safe with arsenic levels below EPA's standard and generally at the "non-detect" level. (Doc. 72-1, PageID.17892-17893.) Baykeeper has publicly admitted that "[c]urrently, we are not aware of any drinking water in the Mobile and

---

[1] EPA, *Final Report: Dam Safety Assessment of CCW Impoundments, James M. Barry Electric Generating Plant,* at 15 (Dec. 8, 2010), *available at* https://www3.epa.gov/epawaste/coal/pdf/apc_barry_cbi_final.pdf. This Court can take judicial notice of documents filed with governmental agencies. *See* Fed. R. Evid. 201*; U.S. v. Howard*, 28 F.4th 180, 186 n.2 (11th Cir. 2022); *Hancock v. Hood*, 686 F. Supp. 2d 1240, 1255 (S.D. Ala. 2010) (quoting *Campos v. I.N.S.*, 32 F.Supp.2d 1337, 1343 (S.D. Fla.1998)) ("Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party.").

[2] *See* NOAA, Historical Hurricane Tracks, https://coast.noaa.gov/hurricanes (search "36512"; select 50 miles under "Search Distance"; select Categories 1-5 and Tropical Storm under "Storm Categories"; select years 1965-2023 under "Year(s)").

Baldwin County area that has arsenic above safe levels." (Doc.76-1, PageID.18535.)

And under its closure plan, Alabama Power will: (1) remove the pond water and decrease the hydraulic head, or downward pressure, that historically has pushed contaminants through the coal ash downward into the groundwater (Doc. 27-1, PageID.4870); and (2) conduct corrective action to address any impacts under the coal ash pond (Doc. 45-1, PageID.6565-6567).

In *Ranger Environmental Services LLC v. Foehl*, No. 1:23-00297-KD-M, 2023 WL 6931336, at *13-*14 (S.D. Ala. Oct 19, 2023), this Court cited *TransUnion*, 141 S. Ct. at 2210, and *Clapper*, 568 U.S. at 414 & n.5, in discussing the "imminence" of harm for purposes of granting injunctive relief. Where plaintiff made allegations of a "possible future injury based on speculation," 2023 WL 6931336 at *14, this Court found that the future injury conditioned on "ifs" and possibly occurring "at some point in the future" was not imminent:

| ***Ranger Environmental*** | **Baykeeper Declarations** |
|---|---|
| "Ranger GM Clay Turner testified -- in conclusory fashion -- that ***if*** Foehl does this, or ***if*** Foehl does that, **at *some point in the future***, it would 'decimate' the company's entire maritime division."<br><br>2023 WL 6931336, at *14 (third emphasis added). | "***If*** the coal ash stored at Plant Barry spilled into the Delta, it would severely harm the area .... [M]y concerns about contaminants from the steam plant and its coal ash … ***if*** the Plant Barry coal ash storage site failed." (Dexter Decl.) (Doc. 1-3, PageID.42) (emphases added). "I am concerned that ***at some point in the future***, my children and grandchildren could see the Delta severely harmed by a coal ash spill from the Plant Barry site …." (Cummings Decl.) (Doc. 1-3, PageID.45) (emphases added). |
| "This is sheer speculation and speculation lacking temporal pertinence (i.e. immediacy). As such, this alone is fatal to Ranger's request for injunctive relief." 2023 WL 6931336, at *14. | |

In *Ranger Environmental*, *id.* at *14, this Court relied on *Clapper*, 568 U.S. at 414 & n.5. In *Clapper*, 568 U.S. at 406, the Supreme Court held there was no standing for attorneys and journalists who sought declaratory and injunctive relief for feared future violations of the Foreign Intelligence Surveillance Act ("FISA") and monitoring of their future communications of suspected terrorists. "[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [*a*]*llegations of possible future injury are not sufficient*." *Id.* at 409 (second emphasis added) (internal quotation marks and citation omitted). The Supreme Court held there was no imminent threat of the injury of surveillance of plaintiffs'

communications with suspected terrorists because plaintiffs relied on a "highly attenuated chain of possibilities"—that the government would target suspected terrorists with which plaintiffs would communicate, that the government would use its authority under the challenged FISA amendments (as opposed to some other statute) to conduct the surveillance, that the FISA court would approve the surveillance procedures, that the government would succeed in intercepting the communications, and that plaintiffs would be parties to the particular targeted communications. *Id*. at 410. This was not sufficient to establish that the FISA surveillance of plaintiffs' communications was "certainly impending." *Id.*

Likewise, Baykeeper relies on a "highly attenuated chain of possibilities"—that the dikes at the Plant Barry ash pond become unstable, that the new berms fail, that a storm substantially more severe than any in the last 58 years occurs, and that a spill of contaminants occurs that is large enough to reach Baykeeper's members' properties. This does not establish that the harm from a future dike failure is "certainly impending." *Clapper*, 568 U.S. at 410.

In *TransUnion*, 141 S. Ct. 2201-02, a class of plaintiffs sued a credit reporting agency for violating the Fair Credit Reporting Act by noting on their credit reports that they were potential matches with a government list of terrorists and serious criminals. Where those credit reports were not sent to third parties, the Supreme Court held that "the risk of future harm"—third parties receiving the credit reports—was "too speculative to support Article III standing." *Id.* at 2211-12. Those plaintiffs had not demonstrated a "sufficient likelihood" of concrete harm and the Supreme Court would not "presume a material risk of concrete harm." *Id.* at 2212 (citation omitted).[3] *See Lujan*, 504 U.S. at 564 (possibly incurring harm "some day" insufficient to establish standing).

---

[3] *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020) (affirming dismissal of defined benefit pensioners' complaint alleging ERISA violations, in part, because "a bare allegation of plan underfunding" today did not demonstrate a substantially increased risk that the plan would not make pension payments in the future); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 933 (11th Cir. 2020) (en banc) (holding allegation that defendant exposed class members "to an elevated risk of identity theft" were insufficient to confer standing where "[n]othing indicates how much risk this might be, however, and no facts alleged in the complaint provide insight into what degree of 'elevated risk' Muransky faced, or why").

And in *HEAL Utah v. PacifiCorp,* 375 F. Supp. 3d 1231, 1235-37 (D. Utah 2019), the court granted summary judgment on standing grounds, where the plaintiff alleged that the owner of a "coal-fired" power plant violated the Clean Water Act by discharging "dredged or fill material" for systems that, among other things, restricted certain water flows. For the court, the possibility of harm to plaintiff's orchard that "may arise *if* she decides at some unspecified time" to "begin operating the orchard" was "too speculative to support standing." *Id*. at 1243. Similarly, Baykeeper's fears that there *might* be a dike failure and spill or drinking water contamination at some unspecified time in the future is insufficient to establish Article III standing. Indeed, if Baykeeper could show that one of its members may be in danger of "imminent" harm from coal ash contaminants, it could have made such a claim under RCRA, but tellingly it did not. *See* 42 U.S.C. § 6972(a)(1)(B) (allowing citizen suit claims for the management of solid waste "which may present an imminent and substantial endangerment to health or the environment").

Baykeeper cites two cases for the proposition that aesthetic or recreational injury is sufficient to establish Article III standing. (Doc. 99, PageID.19345-19346.) But these cases involved visible, concrete harm. In *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1280 (11th Cir. 2015), the Eleventh Circuit concluded that standing existed where "[v]oluminous record evidence indicates that … waters are visibly polluted …." In *Glynn Environmental Coalition, Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1241 (11th Cir. 2022), there was standing because an organization's member enjoyed viewing a wetland and "[a]fter the wetland was replaced with sodding [on resort property], she derived less pleasure …."

By contrast, Baykeeper does not allege that its members can see, smell, or otherwise perceive actual pollution or its effects in any concrete way. And it is not this Court's job to "imagine or piece together an injury sufficient to give a plaintiff standing when it has demonstrated none, and [the courts] are powerless to create jurisdiction by embellishing a deficient allegation of injury." *Hunstein,* 48 F. 4th at 1247-48 (internal quotation marks and citation omitted).

### C. Statements of Present Pollution are Conclusory and Implausible Because of the Lack of Specific Supporting Factual Allegations.

Nowhere in its Complaint or Standing Brief does Baykeeper allege actual pollution of any of its members' properties. (Doc. 1, PageID.4-6); (Doc. 99, PageID.19346). Instead, Kendall Dexter declares that he is "concerned about the pollution from the coal ash site at Plant Barry that flows beside, over, and onto our island." (Doc. 1-3, PageID.41-42.) His only basis for that concern is that he has "*learned* about the risks that unlined coal ash storage near rivers present[] to the environment, including persistent leakage of pollution which *typically* contains harmful pollutants such as arsenic and other contaminants." (*Id.*) (emphases added). Similarly, Luke Adams declares: "My concern is that the coal ash disposal site will continue to pollute the Delta, the Mobile River, and the Tensaw River with known poisons." (Doc. 1-3. PageID.48.) Dr. Adams does not say how he obtained such knowledge (e.g., testing of the rivers) or what "poisons" are allegedly present or in what amounts. The declarations do not mention any personal observations of pollution or impacts from it, any tests, any specific contaminants, or contaminant levels that would be harmful to its members or their property. And for good reason.

Baykeeper's declarants' properties are located many miles away from the coal ash site. From Plant Barry,[4] the path to Runamuck Island, where Messers. Dexter and Cummings's properties are located (Doc. 1-3, PageID.41, 44), runs some 22 miles: 14 miles down the Mobile River, then a left turn and another mile or so down a cutoff channel that runs laterally to the Tensaw River, then a right turn and 3 more miles down the Tensaw, and finally another right turn and 5 more miles down the Raft River.[5]

---

[4] Plant Barry is located near river mile 27 of the Mobile River. *See* U.S. Army Corps of Engineers, Black Warrior-Tombigbee River Chart No. 4 (2019). USACE maps showing river miles on the Mobile River can be accessed here: https://www.sam.usace.army.mil/Missions/Civil-Works/Navigation/Black-Warrior-and-Tombigbee-River/BWT-Alabama-Rivers-Navigation/River-Charts/ (last visited Nov. 27, 2023).

[5] The U.S. Geological Survey ("USGS") has produced maps known as "quadrangles," dated 2020, which can be accessed by searching by the quadrangle name at this location: https://ngmdb.usgs.gov/topoview/viewer/#4/40.01/-100.06 (last visited Nov. 27, 2023). The Basin, AL and Hurricane, AL Quadrangles support the text accompanying this footnote.

Vaughn Miller's property fronts the Tensaw River on "Patrick's Landing Road," (Doc. 1-3, PageID.51) approximately five miles from the cutoff channel and thus some 20 miles from Plant Barry.[6] Luke Adams's property fronts the Tensaw River, "near Bay Minette, just south of I-65" (Doc. 1-3, PageID.47).[7] The Bay Minette area is some four miles from the cutoff, or approximately 19 miles from Plant Barry. Aside from sheer distance, these locations on the Tensaw River areas are miles *upstream* from the cutoff.[8] Pollution thus could not flow that direction.

None of the declarants support their general complaints of pollution with any specific factual allegations. None offer any personal observation of pollution particles or testing of water in the Mobile River or by their properties. There is not even a theory, no matter how speculative, by which pollution found in microscopic concentrations (measured in parts per billion) in groundwater at Plant Barry's ash pond could enter a massive waterbody like the Mobile River,[9] withstand dilution by millions of gallons of water, travel this winding and convoluted path, and arrive more than 20 miles later at Runamuck Island in quantities capable of causing any injury.[10]

Given the lack of supporting factual allegations, the assertions of pollution are conclusory

---

[6] USGS, "Hurricane, AL" Quadrangle (showing "Patrick's Landing" at top right), *supra* n. 5.

[7] USGS, "Hurricane, AL" and "Bay Minette, AL" South Quadrangles, *supra* n. 5.

[8] USGS, "Hurricane, AL" Quadrangle, *supra* n. 5.

[9] Flow volume in the Mobile River is the fourth largest in the United States, behind only "the Mississippi, Columbia, and Yukon Rivers." USGS, Water Quality in the Mobile River Basin Alabama, Georgia, Mississippi, and Tennessee, 1999-2001, Circular 1231, at 4 (2004), *available at* https://pubs.usgs.gov/circ/2004/1231/pdf/circular1231.pdf (last visited Nov. 29, 2023).

[10] For context, EPA found that arsenic exceedances in groundwater generally drop below regulatory limits at a distance of 1,500 meters away from a coal ash impoundment. *See* EPA, *Human and Ecological Risk Assessment of Coal Combustion Residuals*, EPAHQ-RCRA-2009-0640-11993, at 5-39 (Dec. 2014) (Ex. R) (Doc. 47-1through 49-1, PageID.8929) ("EPA modeled arsenic .... The results of the sensitivity analysis show that, while 2.2 percent of surface impoundment runs between 1,000 m and 1,500 meters exceeded the MCL, only 0.1 percent of model runs beyond 1,500 meters exceeded the MCL."). The maximum contaminant level ("MCL") is the groundwater protection standard set by EPA, 40 C.F.R. § 257.95(h).

and not plausible under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, 550 U.S. at 565, the Supreme Court held that even where a complaint includes the ultimate allegation of a violation and harm, the complaint should be dismissed when the supporting allegations lack sufficient factual support to make the ultimate allegation not just possible but plausible. In *Twombly*, plaintiffs alleged that local telephone companies had "entered into a ... conspiracy to prevent competitive entry into their … markets and have agreed not to compete with one another"—an agreement to restrain trade in violation of the Sherman Antitrust Act. *Id.* (quoting complaint). The only support for the allegation of an agreement to restrain trade was allegations of parallel conduct of the traditional local telephone companies in resisting new telephone companies from entering their markets and in not competing with each other. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id*. at 556-57.

Likewise, the only specific allegation supporting Baykeeper's members' conclusory assertion of pollution is the fact of groundwater exceedances on Alabama Power's property. It is *not plausible* under *Twombly* that such a source would lead to harmful contamination in rivers or on property 20 miles away.

## II. The Alleged Harm Is Not Fairly Traceable To The Alleged Statutory Violation But Instead To The Unsupportable Fear Of Future Events Or Implausible, Conclusory Assertions.

Baykeeper's members' assertions that they don't recreate result from their unsubstantiated fears about pollution, not from any imminent harm. (Doc. 1-3, PageID.42, 45, 48, 53.) In *Clapper*, 568 U.S. at 416, costs that the plaintiffs incurred to avoid the feared FISA surveillance (e.g., avoiding email and talking in generalities with suspected terrorists on the phone) did not establish a concrete injury because "the harm [plaintiffs] seek to avoid is not certainly impending." Plaintiffs "*cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending*." *Id*. (emphasis added) (citations omitted). "Any ongoing injuries that respondents are suffering are not fairly traceable to [the FISA

amendments].” *Id*.

A district court dismissed two nearly identical CCR citizen suits on standing grounds (in part), finding that plaintiff’s members’ “diminished use and enjoyment” of local waters was “not directly linked to [the defendant]’s preparation of an initial closure plan that allegedly fail[ed] to comply with the CCR Rule’s requirements regarding its contents.” *Roanoke R. Basin Ass’n v. Duke Energy Progress, LLC*, No. 1:17-cv-561, 2018 WL 1605022, *4 (M.D.N.C. Mar. 29, 2018) (dismissing CCR citizen suit). *See Roanoke R. Basin Ass’n v. Duke Energy Progress, LLC*, No. 1:17-cv-707, 2018 WL 2417862, *5 (M.D.N.C. May 29, 2018) (same). Like Baykeeper, those plaintiffs “fail[ed] to allege an actual, concrete harm to the Association or its members resulting from th[e] alleged procedural violation of the CCR Rule.” 2018 WL 2417862, at *5.

## III. Baykeeper’s Sought After Injunctive Relief Will Not Redress Their Alleged Injury Because An Unrelated Fish Advisory Already Limits Fishing In The Portion of the Mobile River Near Plant Barry.

Any recreational injury attributable to contaminants in the Mobile River near Plant Barry’s ash site is not redressable by the relief that Baykeeper seeks. Due to mercury contamination, the Alabama Department of Health maintains a current “do not eat” advisory for fish caught in the Mobile River at river mile 27, the location of Plant Barry.[11] Whatever harm there may be to recreational interests, a primary cause is mercury. Mercury, however, is not among the contaminants of concern identified at Plant Barry per groundwater monitoring data, nor has Baykeeper alleged mercury contamination in the Mobile River from the ash pond at Plant Barry. *See* (Doc. 1, PageID.13). This means no change in the ash pond closure method would redress any recreational injury Baykeeper’s members may suffer. *See TransUnion*, 141 S. Ct. at 2203.

## CONCLUSION

This Court should dismiss this case for a lack of Article III standing.

---

[11] *See* ADPH, *Alabama Fish Consumption Advisories 2023* at 21 (2023), *available at* https://www.alabamapublichealth.gov/tox/assets/al-fish-advisory-2023.pdf (last visited Nov. 29, 2023); *supra* n. 4 (establishing location of Plant Barry at river mile 27).

Respectfully submitted on this the 30th day of November, 2023

*/s/ Ed R. Haden*
One of the Attorneys for the Defendant
Alabama Power Company

**OF COUNSEL:**
Ed R. Haden (ehaden@balch.com)
Charles A. Burkhart (cburkhart@balch.com)
Steven A. Burns (sburns@balch.com)
Sean W. Shirley (sshirley@balch.com)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100

Jaime W. Betbeze (jbetbeze@maynardnexsen.com)
Raymond L. Bell, Jr. (rbell@maynardnexsen.com)
Evan N. Parrott (eparrot@maynardnexsen.com)
MAYNARD NEXSEN P.C.
RSA Battle House Tower
11 N. Water St., Ste. 24290
Mobile, Alabama 36602
Telephone: (251) 432-0001

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of November, 2023, a copy of the foregoing was filed using the Court's CM/ECF system, which sends an electronic notice to all counsel of record.

*/s/ Ed R. Haden*
Of Counsel